UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **NORMA MELGOZA,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. _____ |
| **RUSH UNIVERSITY MEDICAL CENTER,** a not-for-profit corporation, | ) Jury Trial Demanded |
| Defendant. | ) |

## COMPLAINT

Plaintiff, Norma Melgoza ("Melgoza"), by her attorneys, Ashley L. Orler and Brittany N. Bermudez of Golan Christie Taglia LLP, complains against Defendant, Rush University Medical Center ("Rush" or "Defendant") and states as follows:

### Nature of Action

1. This lawsuit arises under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Equal Pay Act of 1963 as amended, 29 U.S.C. § 206(d), *et seq.* (the "EPA"), and the Illinois Human Rights Act, 775 ILCS 5, *et seq.* (the "IHRA"), in connection with Rush's discrimination against Melgoza on the basis of her national origin and Rush's retaliation against Melgoza after she complained of illegal conduct and filed a lawsuit against Rush relating to violations of Title VII and the EPA.

### Parties

2. At all relevant times, Melgoza worked and resided in this judicial district.

3. Melgoza is a former employee of Rush and worked for Rush in this judicial district.

4. Rush is an Illinois not-for-profit corporation with its principal place of business at 1653 West Congress Parkway, Chicago, Illinois.

## Jurisdiction and Venue

5. This Court has jurisdiction over the Title VII and EPA claims pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331, and supplemental jurisdiction over the IHRA claims pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 as all significant events giving rise to the claims occurred in this judicial district. Venue is also proper in this judicial district because Rush does business and has employees located within this judicial district.

## Exhaustion of Administrative Remedies

7. On April 30, 2021 Melgoza filed a charge of discrimination against Rush (the "Charge of Discrimination") with the United States Equal Employment Opportunity Commission (the "EEOC"). A copy of the Charge of Discrimination is attached hereto as **Exhibit A**.

8. The Charge of Discrimination alleges that Rush discriminated against Melgoza on the basis of her national origin, Mexican-American, and that Rush retaliated against Melgoza after she complained of illegal conduct and filed a lawsuit against Rush relating to violations of Title VII and the EPA

9. On September 30, 2021, the EEOC concluded its investigation into the Charge of Discrimination and issued Melgoza a Dismissal and Notice of Rights (the "EEOC Right to Sue Letter"). A copy of the EEOC Right to Sue Letter is attached hereto as **Exhibit B**. The EEOC Right to Sue Letter provides Melgoza ninety (90) days from the date of her receipt of the letter to file a lawsuit against Rush.

10. On October 4, 2021, Melgoza sent a letter to the Illinois Department of Human Rights (the "IDHR"), enclosing copies of the Charge of Discrimination and the EEOC Right to Sue Letter, and requested that the IDHR adopt the EEOC's determination and issue a Right to Commence an Action (the "IDHR Right to Sue Letter") to Melgoza. A copy of the October 4, 2021 Letter is attached hereto as **Exhibit C**.

11. On October 27, 2021, the IDHR issued Melgoza the IDHR Right to Sue Letter. A copy of the IDHR Right to Sue Letter is attached hereto as **Exhibit D**. The IDHR Right to Sue Letter provides Melgoza ninety (90) days from the date of her receipt of the letter to file a lawsuit against Rush

12. Melgoza filed this Complaint before the expiration of the ninety (90) day periods initiated by the EEOC Right to Sue Letter and the IDHR Right to Sue Letter.

13. Plaintiff has fully exhausted all of her administrative remedies.

**Factual Allegations Common to All Counts**

14. Rush is a not-for-profit healthcare, education, and research enterprise.

15. Melgoza has a Bachelor of Arts Degree from Smith College and a Master's Degree in Public Administration in Health Policy and Management from the Robert F. Wagner Graduate School of Public Service at New York University ("NYU").

16. Melgoza received academic awards both at Smith College and NYU, and was the recipient of the Robert F. Wagner Public Service award during her years at NYU.

17. Melgoza is a Fellow with the American College of Health Care Executives and is certified in Healthcare management.

18. In October 2013, Melgoza received a Leadership Executive Program Certificate from the American College of Health Care Executives. She was selected by the Latino Forum of

Healthcare Executives as a scholarship recipient for her leadership abilities and commitment to patient excellence. The intent of the scholarship was to promote healthcare leaders in the U.S.

19. Melgoza has worked in the healthcare industry for over thirty (30) years, and immediately prior to her employment by Rush, was the Assistant President of Services Lines of Cancer, Medicine, Geriatrics, Women & Children, and Surgery for Mount Sinai Hospital.

20. Melgoza was employed by Rush from 2006 to July 14, 2020.

21. On September 21, 2017, Melgoza filed a lawsuit against Rush in the United States District Court for the Northern District of Illinois (the " Lawsuit").

22. The Lawsuit alleges violations of the EPA and Title VII for Rush's discrimination against Melgoza on the basis of her gender and national origin, as well as Rush's retaliation against Melgoza after she complained of discriminatory treatment and systematic discriminatory practices by Rush.

23. The Lawsuit remains pending as of the date this Complaint was filed.

24. Rush hired a number of individuals to fill positions in its cancer-related departments in 2019, including but not limited to Katie Struck ("Struck") as Chief Administrative Officer of the Cancer Center in May 2019, Josh Ellis ("Ellis") as Associate Vice President of Operations of the Cancer Center in summer 2019, and Danielle Chiemienti ("Chiemienti") as Cancer Service Line Administrator of the Cancer Center in Spring 2019. Ellis was also appointed as Cancer Interim Administrator in 2019 by K. Ranga Rama Krishnan ("Krishnan") in 2019.

25. After Melgoza filed the Lawsuit, Melgoza informed Ellis, her immediate supervisor, that her office was maintained at an ongoing ninety-five (95) degrees, which

Melgoza found suffocating and difficult to work in. Melgoza asked him for help but Ellis ignored her request and the issue was never resolved.

26. After Melgoza filed the Lawsuit, Rush continued to discriminate and retaliate against the African-American women who reported to Melgoza, professionals with years of healthcare experience and performance ratings that *exceeded* expectations.

27. On June 6, 2019, Melgoza was informed by Ellis and Dr. Paula Grabler, ("Grabler"), Medical Director of Breast Imaging, that Melgoza's direct report, Shawnda Mays-Jackson ("Mays-Jackson"), the Director of Radiation Oncology, would be fired due to performance issues.

28. Mays-Jackson is an African-American woman whose performance exceeded expectations for over 10 years at Rush.

29. On June 6, 2019, Melgoza questioned Ellis why Mays-Jackson's alleged performance issues were not previously discussed with Melgoza given that Melgoza was Mays-Jackson's immediate supervisor.

30. Ellis never provided a response to Melgoza's questions regarding Mays-Jackson.

31. On December 7, 2020, Nancee Hofheimer ("Hofheimer") informed Melgoza that another direct report to Melgoza, Sharon Brown-Elms ("Brown-Elms"), Administrator for Breast imaging, was being investigated for performance issues.

32. Brown-Elms is African-American and had a 20-year career at Rush with exceptional performance ratings.

33. From the end of 2019 through the termination of her employment and after the termination of her employment, Melgoza applied to multiple open positions at Rush, all for which Melgoza was fully qualified to perfom.

34. Individuals with far less relevant experience who were not of Mexican-American national origin or who had not previously alleged claims of discrimination and/or retaliation against Rush were hired by Rush to fill open positions to which Melgoza applied.

35. Despite Melgoza's expansive portfolio in cancer-related departments where Melgoza managed complex clinical cancer services at Rush, in May 2019, Ellis provided Melgoza an organizational chart of the Cancer Center without her position listed.

36. When Melgoza brought this issue to Ellis' attention, he informed her that Melgoza's position did not exist within the Cancer Center despite Melgoza holding the position of Director of the Cancer Center and managing complex cancer departments.

37. Failure to include Melgoza's position within the Cancer Center organization interfered with Melgoza's ability to perform her job duties and caused Melgoza to suffer from additional anxiety related to her career at Rush.

38. In 2019 and through the termination of Melgoza's employment, Rush failed to produce a job description or salary grade for Melgoza's position as Director of the Cancer Center even though Melgoza performed the work and exceeded expectations in this position.

39. On November 20, 2019, Ellis informed Melgoza that her salary had not been budgeted in the Cancer Center, again causing Melgoza to suffer from additional anxiety related to her career at Rush.

40. On January 9, 2020, Ellis informed Melgoza that her position at Rush was not budgeted and asked her to figure out where her position fit within the organization even though all budgetary additions required the approval of Struck, Ellis, and Dr. Mia Levy (Medical Director of the Cancer Center).

41. Around this same time, Ellis removed Melgoza's access to Rush's budget systems, which interfered with Melgoza's ability to perform some of her work and complete Ellis' request to figure out where her position fit within the organization.

42. At all relevant times, Karl Bergetz ("Bergetz"), Chief Legal Counsel for Rush, was responsible for the legal review of all contracts and ongoing litigation against Rush.

43. Bergetz was appointed as Acting Chief Human Resource Officer at Rush by Krishnan in summer 2019 and maintained his role as Chief Legal Counsel for Rush at the same time. In that role, Bergetz managed legal affairs and oversaw employment and hiring practices across the organization.

44. As the Acting Chief Human Resource Officer, Bergetz issued a statement stating that he met frequently with key leaders and human resource staff at Rush.

45. On or around October 24, 2019, Melgoza submitted a written complaint to Krishnan, Omar Lateef (Chief Executive Officer), Dr. Mia Levy (Medical Director of the Cancer Center), Ellis and Struck complaining about discrimination and retaliation that she had been subjected to by Rush in connection with the Lawsuit.

46. In November 2019, Melgoza's complaints were referred to Hofheimer. Melgoza informed Hofheimer that Ellis and Struck were excluding Melgoza from key business meetings and removing her access to accounting units, constituting acts of retaliation and discrimination.

47. Even though Melgoza raised these concerns to Hofheimer, in March 2020, Ellis removed Melgoza's access to key accounting units, preventing her from ordering key patient supplies, which was part of Melgoza's job responsibilities.

48. On November 15, 2019, Rush filed its Motion for Summary Judgment seeking judgment in its favor in connection with the Lawsuit.

49. On December 11, 2019, the Honorable Mary M. Rowland entered an order in the Lawsuit referring the Lawsuit to Magistrate Judge Gabriel A. Fuentes for purposes of settlement.

50. The parties did not reach a settlement at that time, and on March 12, 2020, Magistrate Judge Fuentes entered an order terminating the settlement referral.

51. Despite the ongoing Lawsuit, at all relevant times, Melgoza continued to perform her duties exceptionally, and consistently met corporate goals with an expanding portfolio of responsibilities.

52. In her position as Director of Cancer Center and Information, Melgoza was instrumental during the COVID-19 pandemic in assisting Rush by implementing cost containment initiatives and other patient care solutions across the system.

53. From March 2020 through her unlawful termination of employment on July 14, 2020, Melgoza was a member of the COVID-19 Pandemic Mobilization Team and worked multiple shifts during the week and on weekends on the inpatient floors to educate staff on the use of personal protective gear, to transport patients, to carry lab samples, and to implement safety precautions.

54. During the COVID-19 pandemic and while working on the COVID-19 Pandemic Mobilization Team, Melgoza continued to expand and stabilize patient care, implement new technologies in breast imaging, and introduce novel therapies in cellular therapy for patients with complex cancers.

55. During the COVID-19 pandemic, Ellis informed Melgoza that Rush would be laying off her immediate direct report, Brown-Elms, purportedly as part of a reduction in force due to the COVID-19 pandemic.

56. On July 10, 2020, after notifying Melgoza of the planned meeting with Brown-Elms on July 14, 2020, Ellis sent Melgoza an electronic calendar invitation for a meeting between Ellis and Melgoza at 9:45 a.m. on July 14, 2020.

57. After receiving Ellis' electronic calendar invitation for a meeting on July 14, 2020, Melgoza asked Ellis to explain the topic of the meeting and whether Melgoza needed to prepare anything for the meeting.

58. Later in the day on July 10, 2020, Ellis sent an email to Melgoza stating, in part, "I wanted to touch base after I meet with [Brown-Elms]. There's no need to prepare anything [for the July 14, 2020 meeting]."

59. Melgoza also reached out to Dr. Lisa Stempel, Chief of Breast Imaging, and Dr. Paula Grabler regarding the meeting. Both informed Melgoza that her position would not be eliminated, and that the meeting was to update her regarding Brown-Elms. Grabler confirmed this to Melgoza in writing on Friday, July 10, 2020.

60. After Melgoza received Ellis' electronic calendar invitation for a meeting on July 14, 2020, on July 10, 2020, counsel for Melgoza contacted counsel for Rush in the Litigation, and asked Rush to confirm the basis for the meeting scheduled by Ellis with Melgoza at 9:45 a.m. on July 14, 2020. Counsel for Rush never provided any information in response to counsel for Melgoza's request.

61. At a July 10, 2020 Cancer Center Town Hall meeting among certain Rush employees, including Melgoza, Levy stated that the reduction in force in the cancer center positions at Rush "[were] minimal" and "very small."

62. On July 14, 2020 at 9:45 a.m., Melgoza met via virtual video conference with Ellis, and Melgoza was surprised to see that Javette Simmons ("Simmons"), HR Generalist for Rush, was also on the virtual video conference.

63. Without warning, on July 14, 2020, Ellis informed Melgoza that Rush was eliminating her position effective July 19, 2020 due to the company's restructuring of its management positions. Ellis also stated that "Rush was top heavy."

64. On July 14, 2020, with over 13,000 employees, Rush selected Melgoza, the only Mexican-American woman in a leadership position over complex and profitable cancer departments, for employment termination.

65. During the July, 14, 2020 meeting, Melgoza stated she believed the elimination of her role was retaliatory and that she had been selected because she had raised concerns about discrimination, retaliation, equal pay violations and harassment at Rush, including through filing the Lawsuit and making formal complaints to Krishnan, Lateef and Levy. Melgoza also expressed that she was a key, essential employee on the Covid-19 front lines assisting patients and caregivers.

66. In 2019 and 2020, Rush added multiple leadership positions to the Cancer Center, including positions for Ellis, Struck, Chiemienti, Sarah Roche ("Roche") (Director of Finance), Casey Bracket ("Bracket") (Director of Cancer Innovation), and Elizabeth A. Cozzi ("Cozzi") (Director of the Cancer Center, which is a similar job title as Melgoza).

67. Others who were not of Mexican-American national origin and who had not complained of discriminatory or retaliatory conduct by Rush continued to hold leadership positions in the Cancer Center after July 2020, including but not limited to Ellis, Struck, Chiemienti, Roche, Bracket, and Cozzi.

68. Upon information and belief, Rush continues to employ Struck, Ellis, Chiemienti, Cozzi, Roche and Brackett, who had not complained about Rush's harassing, discriminatory and/or retaliatory treatment.

69. Upon information and belief, Rush continues to employ Struck, Ellis, Chiemienti, Cozzi, Roche and Brackett, who had not complained about Rush's unequal pay practices.

70. Upon information and belief, Rush continues to employ Struck, Ellis, Chiemienti, Cozzi, Roche and Brackett, who are not of Mexican-American national origin.

71. Rush used the COVID-19 pandemic as an excuse for eliminating her position when in fact, the decision to terminate Melgoza's employment was due to discrimination against Melgoza based on her national origin.

72. Rush used the COVID-19 pandemic as an excuse for eliminating her position when in fact, the decision to terminate Melgoza's employment was due to retaliation against Melgoza for filing for the Lawsuit and/or failing to settle the Lawsuit.

73. Rush used the COVID-19 pandemic as an excuse for eliminating her position when in fact, the decision to terminate Melgoza's employment was due to retaliation against Melgoza for raising complaints to Rush of Rush's unlawful conduct.

74. At all relevant times, Deloitte & Tousche, LLP served as Rush's independent auditor.

75. Per audited financial statements signed by Patricia S. O'Neil, Interim Senior Vice President and Chief Financial Officer of Rush, Rush received federal Coronavirus Aid, Relief, and Economic Security (CARES) Act grants in the amount of approximately $86 million in fiscal year 2020 and an additional $56.2 million in fiscal year 2021.

76. Rush's balance sheet for fiscal year 2020 also reports receipt of more than $230 million in Medicare advance payment funds.

77. As of mid-August 2020, elective surgical cases at Rush improved to pre-Covid-19 levels.

78. The number of full-time employees at Rush between June 2019 and June 2020 increased by 11.2%, from 12,058 to 13,410.

79. In November 2021, Melgoza applied for the position of Associate Vice President and Chief of Cancer at Rush. As of the date this Complaint was filed, Rush has not contacted Melgoza about her application.

80. Melgoza is qualified for the open Associate Vice President and Chief of Cancer position at Rush.

### Count I – Violation of Title VII of the Civil Rights Act of 1964
### (National Origin Discrimination)

81. Melgoza incorporates paragraphs 1 through 80 as though fully stated herein.

82. At all times material to this Complaint, Rush was an employer within the meaning of Title VII, § 2000e, and employed more than the statutory minimum of fifteen employees.

83. Rush discriminated against Melgoza on the basis of her national origin, Mexican-American, in violation of § 2000e-2.

84. Similarly-situated employees not of Mexican-American origin at Rush did not receive the same treatment as Melgoza.

85. By the foregoing actions, Rush caused Melgoza to be subjected to an unwelcome, hostile working environment due to Melgoza's national origin, Mexican-American, in violation of Title VII.

86. Rush failed to hire and/or promote Melgoza due to Melgoza's national origin, Mexican-American.

87. Rush terminated Melgoza's employment at Rush due to Melgoza's national origin, Mexican-American.

88. Rush's violations of Melgoza's rights under Title VII caused her significant emotional, physical, and monetary harm.

89. Rush's violations of Melgoza's rights under Title VII were willful.

WHEREFORE, Plaintiff, Norma Melgoza, respectfully requests that this Court, after a jury trial, enter judgment in her favor and against Defendant, Rush University Medical Center, and award damages equal to:

(i) all back pay lost as a result of the termination of employment and failure to hire or promote;

(ii) liquidated damages equal to the amount of back pay lost as a result of the termination of employment and failure to hire or promote;

(iii) restoration of Melgoza's title and position at Rush prior to the termination of employment, or equivalent front pay;

(iv) the equivalent front pay for the position(s) to which Rush failed hire or promote Melgoza;

(v) her attorneys' fees and costs; and

(vi) such other and further relief as this Court deems just and proper under the circumstances.

### Count II– Violation of Title VII of the Civil Rights Act of 1964
### (Retaliation)

90. Melgoza incorporates paragraphs 1 through 80 as though fully stated herein.

91. At all times material to this Complaint, Rush was an employer within the meaning of Title VII, § 2000e, and employed more than the statutory minimum of fifteen employees.

92. Rush illegally retaliated against Melgoza for exercising her rights under Title VII.

93. Rush engaged in a continuing campaign of retaliation against Melgoza in connection with her filing of the Lawsuit, failure to settle the Lawsuit, and/or continued complaints to Rush of its unlawful conduct, culminating in the July 14, 2020 termination of her employment, in violation of Title VII.

94. Similarly-situated employees at Rush who did not file a Lawsuit or make continued complaints to Rush of its unlawful conduct did not receive the same treatment as Melgoza.

95. Rush's illegal retaliation against Melgoza caused her significant emotional, physical, and monetary harm.

96. Rush's illegal retaliation against Melgoza was willful.

WHEREFORE, Plaintiff, Norma Melgoza, respectfully requests that this Court, after a jury trial, enter judgment in her favor and against Defendant, Rush University Medical Center, and award damages equal to:

(i) all back pay lost as a result of the termination of employment and failure to hire or promote;

(ii) liquidated damages equal to the amount of back pay lost as a result of the termination of employment and failure to hire or promote;

(iii) restoration of Melgoza's title and position at Rush prior to the termination of employment, or equivalent front pay;

(iv) the equivalent front pay for the position(s) to which Rush failed hire or promote Melgoza;

(v) her attorneys' fees and costs; and

(vi) such other and further relief as this Court deems just and proper under the circumstances.

## Count III – Violation of the Equal Pay Act
## (Retaliation)

97. Melgoza incorporates paragraphs 1 through 80 as though fully stated herein.

98. At all times material to this Complaint, Rush was an employer within the meaning of the EPA, § 203(d).

99. Rush illegally retaliated against Melgoza for exercising her rights under the EPA.

100. Rush engaged in a continuing campaign of retaliation against Melgoza in connection with her filing of the Lawsuit, failure to settle the Lawsuit, and/or continued complaints to Rush of its unlawful conduct, culminating in the July 14, 2020 termination of her employment, in violation of EPA.

101. Similarly-situated employees at Rush who did not file a Lawsuit or make continued complaints to Rush of its unlawful conduct did not receive the same treatment as Melgoza.

102. Rush's illegal retaliation against Melgoza caused her significant monetary harm.

103. Rush's illegal retaliation against Melgoza was willful.

WHEREFORE, Plaintiff, Norma Melgoza, respectfully requests that this Court, after a jury trial, enter judgment in her favor and against Defendant, Rush University Medical Center, and award damages equal to:

(i) all back pay lost as a result of the termination of employment and failure to hire or promote;

(ii) liquidated damages equal to the amount of back pay lost as a result of the termination of employment and failure to hire or promote;

(iii) restoration of Melgoza's title and position at Rush prior to the termination of employment, or equivalent front pay;

(iv) the equivalent front pay for the position(s) to which Rush failed hire or promote Melgoza;

  (v)  her attorneys' fees and costs; and

  (vi)  such other and further relief as this Court deems just and proper under the circumstances.

### Count IV – Violation of the Illinois Human Rights Act
### (National Origin Discrimination)

104. Melgoza incorporates paragraphs 1 through 80 as though fully stated herein.

105. At all times material to this Complaint, Rush was an employer within the meaning of the IHRA, §2-101(B)(1)(a), and employed more than the statutory minimum of fifteen employees.

106. Rush discriminated against Melgoza the basis of her national origin, Mexican-American, in violation of the IHRA.

107. Similarly-situated employees not of Mexican-American origin at Rush did not receive the same treatment as Melgoza.

108. By the foregoing actions, Rush caused Melgoza to be subjected to an unwelcome, hostile working environment due to Melgoza's national origin, Mexican-American, in violation of the IHRA.

109. Rush failed to hire and/or promote Melgoza due to Melgoza's national origin, Mexican-American.

110. Rush terminated Melgoza's employment at Rush due to Melgoza's national origin, Mexican-American.

111. Rush's violations of Melgoza's rights under the IHRA caused her significant emotional, physical, and monetary harm.

112. Rush's violations of Melgoza's rights under the IHRA were willful.

WHEREFORE, Plaintiff, Norma Melgoza, respectfully requests that this Court, after a jury trial, enter judgment in her favor and against Defendant, Rush University Medical Center, and award damages equal to:

(i) all back pay lost as a result of the termination of employment and failure to hire or promote;

(ii) liquidated damages equal to the amount of back pay lost as a result of the termination of employment and failure to hire or promote;

(iii) restoration of Melgoza's title and position at Rush prior to the termination of employment, or equivalent front pay;

(iv) the equivalent front pay for the position(s) to which Rush failed hire or promote Melgoza;

(v) her attorneys' fees and costs; and

(vi) such other and further relief as this Court deems just and proper under the circumstances.

### Count V – Violation of the Illinois Human Rights Act
### (Retaliation)

113. Melgoza incorporates paragraphs 1 through 80 as though fully stated herein.

114. At all times material to this Complaint, Rush was an employer within the meaning of the IHRA, §2-101(B)(1)(a), and employed more than the statutory minimum of fifteen employees.

115. Rush retaliated against Melgoza for exercising her rights under the IHRA.

116. Rush engaged in a continuing campaign of retaliation against Melgoza in connection with her filing of the Lawsuit, failure to settle the Lawsuit, and/or continued complaints to Rush of its unlawful conduct, culminating in the July 14, 2020 termination of her employment, in violation of the IHRA.

117. Similarly-situated employees at Rush who did not file a Lawsuit or make continued complaints to Rush of its unlawful conduct did not receive the same treatment as Melgoza.

118. Rush's illegal retaliation against Melgoza caused her significant emotional, physical, and monetary harm.

119. Rush's illegal retaliation against Melgoza was willful.

WHEREFORE, Plaintiff, Norma Melgoza, respectfully requests that this Court, after a jury trial, enter judgment in her favor and against Defendant, Rush University Medical Center, and award damages equal to:

(i) all back pay lost as a result of the termination of employment and failure to hire or promote;

(ii) liquidated damages equal to the amount of back pay lost as a result of the termination of employment and failure to hire or promote;

(iii) restoration of Melgoza's title and position at Rush prior to the termination of employment, or equivalent front pay;

(iv) the equivalent front pay for the position(s) to which Rush failed hire or promote Melgoza;

(v) her attorneys' fees and costs; and

(vi) such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

Ashley L. Orler, Esq. (#6297339)
Brittany N. Bermudez, Esq. (# 6317591)
GOLAN CHRISTIE TAGLIA LLP
70 W. Madison Street, Suite 1500
Chicago, Illinois 60602
(312) 263-2300
alorler@gct.law
bnbermudez@gct.law

Norma Melgoza,
Plaintiff,

By: */s/ Ashley L. Orler*
One of her Attorneys