IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORMA MELGOZA,<br><br>Plaintiff,<br><br>v.<br><br>RUSH UNIVERSITY MEDICAL CENTER,<br><br>Defendant. | Case No. 21-cv-06717<br><br>Judge Mary M. Rowland |

### MEMORANDUM OPINION AND ORDER

In this employment discrimination case, Plaintiff Norma Melgoza claims that her former employer, Defendant Rush University Medical Center, discriminated and retaliated against her. Rush moves to dismiss the complaint with prejudice. For the reasons stated herein, Rush's Motion to Dismiss and for Sanctions [9] is granted in part and denied in part.

**I. Background**

The following factual allegations taken from the operative complaint (Dkt. 1 "Compl.") are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Rush employed Melgoza from 2006 to July 14, 2020. (Compl. ¶ 20). On September 21, 2017, Melgoza filed a lawsuit against Rush in this Court (17-cv-6819, "*Melgoza I*"). *Id.* ¶ 21.[1] *Melgoza I* alleges violations of the Equal Pay Act (EPA) and Title VII based on gender and national origin discrimination and Rush's retaliation against

---

[1] She filed an amended complaint in *Melgoza I* on July 24, 2018. (Dkt. 43, Am. Compl.).

1

her for complaining about discriminatory treatment and systematic discriminatory practices. *Id*. ¶ 22. In November 2020, this Court granted in part and denied in part Rush's summary judgment motion. (*Melgoza I,* Dkt. 225). As a result of that ruling, Count I (Equal Pay Act), Counts III and IV (Title VII discrimination), and Count V (Title VII retaliation) remain pending for trial.

From the end of 2019 through the termination of her employment and after the termination, Melgoza applied to multiple open positions at Rush. Compl. ¶ 33. Melgoza alleges she was fully qualified for all of these positions, but individuals with far less relevant experience who were not of Mexican-American national origin or who had not previously alleged discrimination and/or retaliation against Rush were hired by Rush to fill open positions to which Melgoza applied. *Id*. ¶¶ 33–34. In May 2019, Josh Ellis (Melgoza's immediate supervisor) provided Melgoza an organizational chart of the Cancer Center that omitted Melgoza's position. *Id*. ¶¶ 25, 35. In 2019 and through the termination of Melgoza's employment, Rush failed to produce a job description or salary grade for Melgoza's position as Director of the Cancer Center despite her excellent work performance. *Id*. ¶ 38. In November 2019, Ellis informed Melgoza that the Cancer Center had not budgeted her salary. *Id*. ¶ 39. On January 9, 2020, Ellis informed Melgoza again that her position at Rush was not budgeted and asked her to figure out where her position fit within the organization. *Id*. ¶ 40. Around this same time, Ellis removed Melgoza's access to Rush's budget systems, which interfered with Melgoza's ability to perform some of her work and complete Ellis' request to figure out where her position fit within the organization. *Id*. ¶ 41.

2

In October 2019, Melgoza submitted a written complaint to executives alleging that she experienced discrimination and retaliation in connection with *Melgoza I*. *Id.* ¶ 45. In November 2019, Melgoza complained that Ellis and Struck were excluding Melgoza from key business meetings and removing her access to accounting units, constituting acts of retaliation and discrimination. *Id.* ¶ 46. Even though Melgoza raised these concerns, in March 2020, Ellis removed Melgoza's access to key accounting units, preventing her from ordering key patient supplies, which was part of Melgoza's job responsibilities. *Id.* ¶ 47. From March 2020 through her termination on July 14, 2020, Melgoza belonged to Rush's COVID-19 Pandemic Mobilization Team. *Id.* ¶ 53.

During the COVID-19 pandemic, Ellis informed Melgoza that Rush would be laying off her direct report as part of a reduction in force due to the COVID-19 pandemic. *Id.* ¶ 55. At a July 10, 2020 Cancer Center Town Hall meeting among certain Rush employees, including Melgoza, Mia Levy, Medical Director of the Cancer Center, stated that the reduction in force in the Cancer Center positions at Rush were minimal. *Id.* ¶ 61. On July 14, 2020, at a virtual meeting, Ellis informed Melgoza that Rush was eliminating her position effective July 19, 2020 due to the company's restructuring of its management positions. *Id.* ¶ 63. Melgoza alleges that on July 14, 2020, "with over 13,000 employees, Rush selected Melgoza, the only Mexican-American woman in a leadership position over complex and profitable cancer departments, for employment termination." *Id.* ¶ 64. During the July 14 meeting, Melgoza stated she believed the elimination of her role was retaliatory and that she

3

had been selected because she had raised concerns about discrimination, retaliation, equal pay violations and harassment at Rush, including through filing *Melgoza I* and making formal complaints. *Id*. ¶ 65. Others who were not of Mexican-American national origin and who had not complained of discriminatory or retaliatory conduct by Rush continued to hold leadership positions in the Cancer Center after July 2020 and continue to be employed at Rush. *Id*. ¶¶ 67–69.

According to Melgoza, Rush used the COVID-19 pandemic as an excuse to eliminate her position, when in fact Rush terminated her: (1) because of her national origin; (2) in retaliation against her for filing *Melgoza I* and/or failing to settle that lawsuit; and (3) in retaliation for raising complaints to Rush about its unlawful conduct. *Id*. ¶¶ 71–73. In November 2021, Melgoza applied for the position of Associate Vice President and Chief of Cancer at Rush. *Id*. ¶ 79. Rush has not contacted Melgoza about her application, though Melgoza says she is qualified for this position. *Id*. ¶¶ 79–80.

In this lawsuit ("*Melgoza II*"), Melgoza brings claims for: (1) national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 (Count I); (2) violation of Title VII of the Civil Rights Act of 1964 (Count II); (3) violation of the EPA (Count III); (4) national origin discrimination in violation of the Illinois Human Rights Act (IHRA) (Count IV); and (5) retaliation in violation of the IHRA (Count V).

**II.   Standard**

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and

4

raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)). Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

### III. Analysis

#### A. Claim Splitting

The doctrine of claim splitting "prohibits a plaintiff from bringing a new case raising issues arising out of the same transaction or occurrence as an earlier case, when those issues could have been raised in the first litigation." *Rexing Quality Eggs*

*v. Rembrandt Enters., Inc.*, 953 F.3d 998, 1002 (7th Cir. 2020). "Plaintiffs generally must bring all claims arising out of a common set of facts in a single lawsuit, and federal district courts have discretion to enforce that requirement as necessary 'to avoid duplicative litigation.'" *Elgin v. Dep't of Treasury*, 567 U.S. 1, 34 (2012) (Alito, J., dissenting) (citation omitted)). "A suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 889 (7th Cir. 2012) (cleaned up). "A dismissal on th[e] ground [of claim splitting] has been viewed as a matter of docket management, reviewed for abuse of discretion." 18 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4406 (3d ed.). *See also CIVIX–DDI, LLC v. Expedia, Inc.*, 2005 WL 1126906, at *4 (N.D. Ill. May 2, 2005) ("Courts prohibit a litigant from splitting its claims into multiple actions when the litigant should have brought the claims in a single action."). To determine whether to dismiss a suit based on claim splitting (a concept similar to the doctrine of claim preclusion), courts evaluate whether in the two suits there is (1) an identity of the parties and (2) an identity of the causes of action. *See Scholz v. United States*, 18 F.4th 941, 952 (7th Cir. 2021).

Because Melgoza does not dispute that her two lawsuits have identical parties,[2] the dispute centers around whether there is an identity of the causes of action. Melgoza contends that "[t]he new claims in *Melgoza II* arise under a separate set of

---

[2] Melgoza argues that *Melgoza II* involves "additional Defendant executives" (Dkt. 15 at 2), but in both cases Rush is the only named defendant. The Court is cognizant that discovery of certain individuals will be necessary.

6

circumstances and involve different theories and additional Defendant executives." (Dkt. 15 at 2).

Rush argues, and Melgoza does not dispute, that: (1) *Melgoza I* and *II* both assert claims under the EPA, Title VII (national origin, sex, and retaliation), and the Illinois Human Rights Act (national origin sex, and retaliation); (2) Melgoza's April 2021 EEOC Charge contained claims of discrimination, harassment, and retaliation *predating* her 2020 termination; and (3) this Court granted Rush's motion to stay *Melgoza I* pending the EEOC resolution of Melgoza's 2021 charge because the 2021 allegations "involve largely the same actors and many of the same facts" as *Melgoza I*. (*Melgoza I*, Dkt. 249).

Still, Melgoza contends that *Melgoza II* involves a different time frame and different Rush executives than *Melgoza I* because in *Melgoza II*, she alleges that "she was subjected to discrimination and retaliation as a result of her making internal complaints to Defendant regarding its illegal conduct, filing *Melgoza I*, and failing to settle *Melgoza I* while summary judgment was pending." (Dkt. 15 at 4). However, Melgoza's two complaints and her summary judgment filings in *Melgoza I* belie her assertion that there has been no claim splitting.

Claim splitting applies if the legal theories involve the "same or nearly the same [] factual allegations." *Scholz*, 18 F.4th at 952–53 ("Scholz 'was obliged to,' but did not, 'raise all claims that stem from the same transaction or series of related transactions' in *Scholz I*.") (quotation omitted). In her amended complaint in *Melgoza I,* Melgoza alleged that in July 2016, "Rush demoted [her] two levels down [and] her

7

position as Associate Vice President was eliminated." (Am. Compl. ¶ 44). In early 2017 after another individual was promoted, "the gender and national origin discrimination and retaliation by Rush against Melgoza continued." *Id*. ¶ 82. She stressed that Rush's "discrimination and retaliation continues." *Id*. ¶ 93. In addition, in her summary judgment response brief in *Melgoza I*, Melgoza argued that she submitted "ample evidence that Rush management retaliated against her for her protected complaints, her [EEOC Charge], and this resulting litigation." (Dkt. 166 at 12). She argued that "[d]espite the double demotion, Melgoza continues to fight for her hard-earned career and raise complaints about her unequal treatment in the workplace." (*Id*.) And Rush executives responded by "continu[ing] to perpetuate a culture of white male supremacy, subjecting Melgoza to a systematic campaign of discrimination and retaliation designed to strip her of her responsibilities, stunt her pay, and block her chances of advancement within Rush." (*Id*.)

These statements demonstrate that the first lawsuit is not as limited in time or scope as Melgoza now maintains. *See Scholz*, 18 F.4th at 953 (finding that the first complaint was not as temporally limited as plaintiff claimed, as seen in both the complaint and plaintiff's summary judgment litigating positions). In addition, the *Melgoza II* complaint alleges that Rush engaged in a "*continuing campaign* of retaliation against Melgoza [that] culminat[ed] in the July 14, 2020 termination of her employment." (Compl. ¶ 93, emphasis added). Thus, Melgoza's own allegations and litigation positions confirm that her claims "aris[e] out of a single wrong [which should] be presented in one action." *Elmhurst Lincon-Mercury, Inc. Emps. 401(k)*

*Profit Sharing Plan & Tr. v. Mears*, 215 F. Supp. 3d 659, 665 (N.D. Ill. 2016) (quoting *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015)).

Dismissal for claim splitting is appropriate even though the underlying facts are not completely identical in the two suits and *Melgoza II* involves some additional Rush executives. *See Scholz,* 18 F.4th at 956 (finding that claim splitting applied where "[counts] were reasonably wrapped into the same identity of the causes of action covering the broad set of interactions between [plaintiff] and the [defendant]"); *see also Barr v. Bd. of Trustees of W. Ill. Univ.,* 796 F.3d 837, 840 (7th Cir. 2015) (concluding that despite some differences, "both suits arise out of the same main event: the University's decision not to retain [plaintiff] on its faculty."); *Digital Dynamics Software, Inc. v. Eclipse Gaming Sys., LLC*, No. 18 C 892, 2018 WL 2463378, at *6 (N.D. Ill. June 1, 2018) (explaining that claim splitting can still apply when "separate suits are different in some respects").

In response to Rush's dismissal motion, Melgoza unpersuasively argues that *Czarniecki v. City of Chicago,* 633 F.3d 545 (7th Cir. 2011), is distinguishable. *Czarniecki* reiterated the well-settled principle that res judicata (and by extension, claim splitting) applies when two claims are based on the same or "nearly the same [] factual allegations." 633 F.3d at 550. The theories in *Melgoza I* and *II* involve nearly the same factual allegations. And while this case and *Czarniecki* are not identical, Melgoza offers no case law of her own to support her position that the claim splitting doctrine does not apply in this case.[3]

---

[3] In addition, as Rush points out, Melgoza claims damages including both front and back pay in both suits, further demonstrating the similarity between the two lawsuits. This is not a

Therefore, the Court, in its discretion, finds that dismissal with prejudice based on the doctrine of claim splitting is warranted. However, the Court will permit Melgoza to pursue her termination claim from *Melgoza II* in *Melgoza I*. Although *Melgoza I* alleged discrimination based on the adverse actions of Melgoza's demotion and her position being eliminated, she was not formally terminated until July 2020. Rush states that it would not have opposed Melgoza amending *Melgoza I* to include allegations relating to the termination of her employment. (*See* Dkt. 10 at 2). The Court's decision is a discretionary one, and claim splitting is "concerned with the district court's comprehensive management of its docket." *Collins v. Cook County*, No. 18 C 2665, 2019 WL 414664, at *2 (N.D. Ill. Feb. 1, 2019) (cleaned up). Accordingly the Court finds dismissal is warranted, but will permit Melgoza to add her termination claim to *Melgoza I*.

### B. Request for Sanctions

A court imposing sanctions for litigation misconduct must first make a finding of "bad faith, designed to obstruct the judicial process, or a violation of a court order." *Fuery v. City of Chicago*, 900 F.3d 450, 463–64 (7th Cir. 2018) (quoting *Tucker v. Williams*, 682 F.3d 654, 662 (7th Cir. 2012)). Rush argues that this case is a "textbook example of claim splitting, time wasting, and bad faith conduct" because Melgoza moved to amend her complaint after her termination in July 2020, but before Rush could state its position, Melgoza withdrew that motion; then ten months later, after the Court had decided the *Melgoza I* summary judgment motion she filed a new

---

confidential settlement statement, as Melgoza argues. Rather it is found in the prayers for relief in both complaints. Melgoza's request for sanctions against Rush on this basis is denied.

10

EEOC Charge and IHRA charge, and then this new suit without notifying the clerk of its relatedness *Melgoza I*. (Dkt. 10 at 14–15).

The Court is concerned about Plaintiff's conduct here. The civil cover sheet in this matter makes no reference to *Melgoza I*. That is improper. More importantly, while Melgoza has a right to pursue her administrative actions, she waited almost the full 300 days to file her administrative charge—filing on April 30, 2021—a full 10 months after her termination. That is an extraordinarily long time for a plaintiff with litigation pending. And this was after Melgoza had already filed a request to amend her *Melgoza I* complaint and then withdrew that request. This leads the Court to conclude that the basis for the legal claims in *Melgoza II* were clear to Plaintiff for quite some time prior to filing this complaint. This has led to this briefing (potentially wasteful) and significant delay in *Melgoza I*. Ms. Melgoza is reminded that, while she has a right to pursue her administrative remedies, the defendant also has a right to have claims against it resolved in a timely fashion. The way she has handled this claim has undoubtedly added over one year of time to this litigation. The Court admonishes Ms. Melgoza for the delay resulting from her litigation choices and the avoidable burden it placed on defendant and the Court.

At the same time, as Melgoza points out, Rush has not cited case law in which a plaintiff was sanctioned for claim splitting. Thus Melgoza's conduct does not rise to the level requiring sanctions at this time.

11

## IV. Conclusion

For the stated reasons, Rush's Motion to Dismiss and for Sanctions [9] is granted in part and denied in part. This lawsuit is dismissed with prejudice. Civil case terminated.

E N T E R:

Dated: September 26, 2022

MARY M. ROWLAND
United States District Judge